USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/31/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEITH THOMAS COX,

                              Plaintiff,

              v.

BRIAN FISCHER, COMMISSIONER,
N.Y.S. DEPARTMENT OF CORRECTIONS
& COMMUNITY SERVICES; SENIOR
PAROLE OFFICER MURPHY, SHIELD
NO. 0421; PAROLE OFFICER CAMPBELL,
SHIELD NO. 2013; CORRECTION
OFFICER L. SMITH; CORRECTION
OFFICER ROBINSON; and CORRECTION
OFFICER BOYKIN,

                              Defendants.

No. 14-CV-1862 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

   Plaintiff Keith Thomas Cox, proceeding *pro se*, brings this Section 1983 action against Defendants Brian Fischer, former Commissioner of the New York State Department of Corrections and Community Supervsion ("DOCCS"), DOCCS Senior Parole Officer Murphy, Parole Officer Campbell, and Edgecombe Residential Treatment Facility Correction Officers Smith, Robinson, and Boykin. Before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

---

[1] These facts are drawn from the parties' submissions in connection with Defendants' motion for summary judgment, including Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Defs. 56.1") (Dkt. 46), the Declaration of Michael J. Keane in Support of Defendants' Motion for Summary Judgment and accompanying exhibits ("Keane Decl.") (Dkt. 47), the Declaration of Jeffrey Hale in Support of Defendants' Motion for Summary Judgment and accompanying exhibit ("Hale Decl.") (Dkt. 45), and Plaintiff's Sworn Opposition to Defendant[s'] Notice of Motion for Summary Judgment and

**A. Cox's Conviction**

On October 2, 2016, Cox attempted to steal twelve Kodak cameras from a Duane Reade drug store.  After a trial in the New York Supreme Court, Cox was convicted of third-degree burglary and sentenced to three and one-half to seven years in prison.  On June 25, 2012, after serving five years in prison, Cox was released on parole.

**B. The August 14, 2012 Incident**

On August 14, 2012, Cox reported to the Bronx I Area Parole Office for a routine parole visit.  While Cox was waiting for his parole officer, his cell phone began to ring.  Defs. 56.1 ¶ 4.  DOCCS requires parolees to silence the ringers on their cell phones while they are reporting.  *Id.* ¶ 5.  Parole Officer Campbell confiscated Cox's phone.  *See id.* ¶ 4.  In response, Cox turned to Parole Officer Bennett and, referring to Campbell, asked, "Who's that broad?"  Keane Decl. Ex. B ("Cox Feb. 1 Dep. Tr.") at 34:11−12.  Cox then stepped outside to smoke a cigarette.  Defs. 56.1 ¶ 6.

When Cox returned, Officer Campbell asked whether he had called her a "broad."  *Id.*  Cox did not respond. *Id.* ¶ 7.  Officers Bennett and Campbell then escorted Cox to a copy room, measuring approximately eight feet by ten feet, in the back area of the parole office.  *See id.*

At this point, Senior Parole Officer Murphy, who stands six feet three inches tall and weighs 290 pounds, confronted Cox in the copy room.  *Id.* ¶ 8; Keane Decl. Ex. C ("Cox Mar. 29 Dep. Tr.") at 22:5−7.   According to Cox, Officer Murphy asked whether he had called Officer Campbell a "broad," then said, "We got something for dudes like you.  Put your hands on the wall."  Cox Feb. 1 Dep. Tr. 50:21−51:2.  Cox did not immediately put his hands on the wall.  *See* Defs. 56.1 ¶ 11.  Instead, Cox asked, "What are you talking about?  Why do I have to put my hands

accompanying exhibits ("Pl. Opp.") (Dkt. 50), as well as exhibits accompanying Plaintiff's Complaint (Dkt. 2).  *See* S.D.N.Y. Local Rule 56.1(c)−(d).

on the wall?"  Cox Feb. 1 Dep. Tr. at 51:4–6; Cox Mar. 29 Dep. Tr. at 17:7–12.  Cox claims that, at this point, he was calm, though Murphy was "belligerent."  Cox. Feb. 1 Dep. Tr. at 53:11–12. Officer Murphy then pushed Cox in the chest.  Defs. 56.1 ¶ 14.  Cox responded by telling Officer Murphy, "You have no right to put your hands on me.  Why are you putting your hands on me?"  Cox Feb. 1 Dep. Tr. at 54:20–23.  Cox testified that he did not "raise [his] hand or use [his] hand" in a way that could have suggested that he was "coming after" Officer Murphy.  Cox Mar. 29 Dep. Tr. at 18:21–23.  According to Cox, Officer Murphy then "swung and hit" Cox on the left side of his jaw with a closed fist.  Defs. 56.1 ¶ 15; Cox Feb. 1 Dep. Tr. at 54:23–24, 55:8–24.

Officer Murphy next called for assistance from other officers.  Defs. 56.1 ¶ 18.  Cox testified that he "remained calm," "didn't struggle," and "didn't resist or anything."  Cox Feb. 1 Dep. Tr. at 59:16–17.  Cox claims that at least four and as many as nine parole officers arrived in response to Officer Murphy's call and proceeded to grab Cox by his arms and legs, choke him, and "slam[]" his body to the floor.  *Id.* at 59:18–22; *see* Defs. 56.1 ¶ 20; Compl. at 6.  Cox hit a copy machine on his way down, and at least one officer fell to the ground with him.  *See* Defs. 56.1 ¶¶ 19–23.  Cox testified that, as the officers held him, he "didn't resist at all."  Cox Feb. 1. Dep. Tr. at 69:23.  Once Cox was on the ground, he was handcuffed, and the physical struggle ended.

Parole officers who were on the scene recall the incident differently.  Officer Herrera, for example, testified at a preliminary parole revocation hearing that Cox "flail[ed] his arms," "shout[ed] at Senior Parole Officer Murphy," and "resisted" the officers' orders to raise his arms for handcuffing.  Pl. Opp. Ex. 9 at 4.  Officer Jones, who was also present for the incident, testified that other officers came to Officer Murphy's assistance because Cox "resisted."  Pl. Opp. Ex. 8 at 6, 9.  Asked whether Cox was "combative" before Officer Murphy used force, Officer Jones

answered, "He made a gesture." *Id.* at 5–6.[2]  Cox's violation of release report alleged that Cox "threatened the safety and well being of others" by "flailing his arms and striking at Senior Parole Officer Murphy causing him to sprain his lower back" and by "acting in a combative manner causing Parole Officer Herrera to be knocked down to the floor injuring his back."  Pl. Opp. Ex. 2 at 3.

It is not disputed that Cox immediately received medical attention.  A medical examination indicated that Cox had dislocated his left rotator cuff and that he had footprints on his back, bruising to his ribs and upper torso, and a "choke mark" around his neck.  *See* Defs. 56.1 ¶ 25. Cox was given painkillers and told to treat his injury with massage, hot water, and sleep.  *See id.* ¶¶ 27–28.  Cox followed these instructions, and his shoulder injury "healed right away." *Id.* ¶¶ 28– 30.  As a result of the parole office incident, Cox's parole was revoked.  *See id.* ¶¶ 34–36.

## C.  The March 8, 2013 Incident

After his parole was revoked, Cox was held in DOCCS custody at Edgecombe Residential Treatment Facility.  Defs. 56.1 ¶ 37.  On March 8, 2013, Cox did not appear as scheduled for transportation to his work station at the Edgecombe laundry.  *See id.* ¶ 41.  Officer Smith was charged with retrieving Cox and escorting him to the laundry.  *See id.* ¶ 42.

When Officer Smith arrived at Cox's dormitory, Cox indicated that he needed to return to his bunk to retrieve his identification card.  *Id.* ¶ 49.  Cox claims that, as he emerged from the bunk area, he was "putting his identification card in his left lapel with his right hand" at a distance of approximately twenty feet from Smith.  Cox Feb. 1 Dep. Tr. at 90:14–16, 94:24–95:16.  Officer Smith then moved towards Cox, stating, "You want to raise your hands." *Id.* at 95:23–25.  Cox

---

[2] Officer Jones testified that she did not see Officer Murphy hit Cox in the face but did see Officer Murphy "caus[e] damage to [Cox's] left upper lip," at which point "everyone that was in the area intervened."  Pl. Opp. Ex. 8 at 6–7.

4

testified that Officer Smith could not have interpreted his hand movements as a threatening gesture. *See* Cox Feb. 1 Dep. Tr. at 97:18–21, 111:19–23.

Cox and Officer Smith then engaged in a physical struggle. Defs. 56.1 ¶ 59. According to Cox, Officer Smith pushed him into the bed area and "slammed" Cox into the bunk beds. Cox Feb. 1 Dep. Tr. at 90:14–20, 96:1, 99:15–16. Cox testified that Officer Smith then pulled his right arm behind his back, pushed his face towards the wall, and "slammed" him into two lockers and the bunk beds. Defs. 56.1 ¶ 60. Officer Robinson, who "observed the whole encounter," Cox Feb. 1 Dep. Tr. at 98:21–25, pulled her alarm at some point during the incident, and three other officers arrived on the scene, Defs. 56.1 ¶ 64.

Cox was then taken to the Edgecombe medical unit. *See* Defs 56.1 ¶ 65. At the medical unit, a nurse found that Cox had approximately eighteen "superficial red openings," of about one-eighth of an inch to one inch in size, on his back. *See* Defs 56.1 ¶ 66; Cox Feb. 1 Dep. Tr. at 101:2–103:4. The nurse further reported that Cox denied feeling any pain. Cox Feb. 1 Dep. Tr. at 103:6. At his deposition, Cox testified that he was not in pain at the time. *Id.* at 104:18–19.

### D. Procedural History

On March 10, 2014, Cox filed a complaint in this action. Dkt. 2. On June 8, 2015, Defendants filed an answer, asserting qualified immunity as a defense. Dkt. 27. On May 13, 2016, Defendants moved for summary judgment. Dkt. 42. On June 30, 2016, Cox filed an opposition to Defendants' motion. Dkt. 50. On July 29, 2016, Defendants filed a reply. Dkt. 52.

## LEGAL STANDARDS

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016).  "The movant bears the burden of demonstrating the absence of a question of material fact."  *Chaparro v. Kowalchyn*, No. 15-CV-1996 (PAE), 2017 WL 666113, at \*3 (S.D.N.Y. Feb. 17, 2017).  "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether to grant summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011)).  In addition, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned."  *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (alteration omitted) (citations omitted).

## B.  Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Tracy v. Freshwater*, 623 F.3d 90, 95–96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60–61 (2d Cir. 2009)); *see also Rogoz v. City of Hartford*, 796 F.3d

236, 247 (2d Cir. 2015). "Accordingly, when a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy*, 623 F.3d at 96. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). The Supreme Court has emphasized that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)). While Supreme Court precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (alteration omitted) (internal quotation marks omitted).[3] "[T]he clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)); *see also Mullenix*, 136 S. Ct. at 308 ("This inquiry 'must be undertaken in light of the specific context of the case, not as

---

[3] While the Second Circuit has not provided a bright-line rule regarding the sources a court may consider in determining whether a constitutional right was "clearly established," it has expressly disagreed with the view that "'*only* Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established.'" *Terebesi v. Torreso*, 764 F.3d 217, 231 n.12 (2d Cir. 2014) (emphasis in original) (alteration omitted) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).

a broad general proposition.'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam))).

## DISCUSSION

### A.  The August 14, 2012 Incident

Cox first claims that Officer Murphy used excessive force during the August 14, 2012 incident at the parole office.  The Court concludes that Officer Murphy is not entitled to qualified immunity on this claim.

#### 1.  Violation of a Constitutional Right

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct."  *Id.*  "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."  *Id.*

As several courts have recognized, a parolee's claim that he was subjected to excessive force in the course of an arrest for a parole violation arises under the Fourth Amendment, not the Eighth Amendment.  *See, e.g.*, *Rushion v. NYS Div. of Parole*, No. 13-CV-4277 (RRM), 2016 WL 5255812, at *4 (E.D.N.Y. Sept. 21, 2016) ("Allegations by a parolee that he was subjected to excessive force while being arrested by his parole officer for a parole violation are analyzed under the Fourth Amendment."); *Rivera v. Madan*, No. 10-CV-4136 (PGG), 2013 WL 4860116, at *8 (S.D.N.Y. Sept. 12, 2013) ("The Fourth Amendment applies to an excessive force claim brought

by a parolee in connection with some new offense or violation parole officers believed had been committed." (alteration omitted) (internal quotation marks omitted)); *Turner v. White*, 443 F. Supp. 2d 288, 294 (E.D.N.Y. 2005).[4]  The rationale is straightforward: when officers use force against a parolee they suspect of violating the conditions of his parole, they are effecting a "seizure" of the parolee for committing a new offense, not a "punishment" for committing the crime for which he was convicted.  U.S. Const. amends IV, VIII.  Indeed, the Division of Parole records submitted in this case state that Cox was attempting "to avoid his lawful *arrest*" for parole violations at the time of the incident.  And when the parolee is seized, his right to be free from excessive force derives from the same source as that of other members of the public—the Fourth Amendment.  *See, e.g.*, *Graham*, 490 U.S. at 395 ("*All* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." (alteration omitted) (emphasis in original)).  Therefore, although Defendants apply Eighth Amendment standards to Cox's excessive force claim arising out of the parole office incident, the Court analyzes this claim under the Fourth Amendment.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard.'"  *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 395).  "Determining excessiveness requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Id.* (quoting *Graham*, 490 U.S. at 396).  In conducting this

---

[4] *See also Peoples v. Kimmey*, 67 F. App'x 506, 507 (10th Cir. 2003) (unpublished) (analyzing a parolee's excessive force claim under the Fourth Amendment); *Ellis v. City of San Diego*, 176 F.3d 1183, 1189 n.4 (9th Cir. 1999) (rejecting the argument that the "rights of parolees are identical to those of prisoners" in the excessive force context), *as amended on denial of reh'g* (June 23, 1999).

balancing, a court generally considers the following three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

The Supreme Court has emphasized, however, that courts must evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Tracy*, 623 F.3d at 96. Courts must also "make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 397). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397).

Viewing the evidence in the light most favorable to Cox, the Court concludes that a reasonable juror could find that Officer Murphy used excessive force. First, Cox's offenses were minor. According to the Amended Violation of Parole Report, Cox had violated the conditions of his parole by failing to follow Officer Campbell's instruction to turn off his cell phone, by engaging in "disrespectful behavior" in referring to Officer Campbell as a "broad," and by "flailing" his arms. *See* Pl. Opp. Ex. 2 at 3–5. A reasonable juror could find that this conduct was neither

dangerous nor threatening.  Rather, these alleged parole violations are analogous to the offenses of disorderly conduct or resisting arrest, which are not considered severe in the excessive force context.  *See, e.g.*, *Brown*, 798 F.3d at 101; *Gersbacher v. City of N.Y.*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015).  Indeed, the minor nature of this parole violation is underscored by the fact that, under New York law, parole officers lack statutory authority to make warrantless arrests for parole violations that, as in this case, occur in the officers' presence.  *See People v. Bratton*, 870 N.E.2d 146, 148 (N.Y. 2007).  Consideration of the severity of Cox's offenses thus weighs against a finding that Officer Murphy's use of physical force was reasonable.

Second, a reasonable juror could find that Cox did not pose an immediate threat to the safety of the officers or others.  It is not disputed that, at the time Officer Murphy began to use force, Cox was confined to a small copy room, measuring only eight feet by ten feet.  It is also undisputed that Officer Murphy had considerable support from other officers: at least three other officers were present in the copy room when he punched Cox in the jaw.  *See O'Hara v. City of New York*, 570 F. App'x 21, 23 (2d Cir. 2014) (summary order) (denying qualified immunity on excessive force claim against officer who allegedly "punched [an arrestee] in the face" even though he was "one of six armed officers on the scene"); *cf. Tracy*, 623 F.3d at 97 (granting qualified immunity to an officer who allegedly hit a suspect with his flashlight, where the officer "was operating without back up on the side of a road at night and in bad weather").  A juror could also reasonably find that Cox, at 201 pounds, was no physical match for Murphy, who stands six feet three inches and weighs 290 pounds.  *See Brown*, 798 F.3d at 101 (denying qualified immunity to officers on Fourth Amendment excessive force claim based, in part, on evidence that the officers were significantly larger than the arrestee).  Moreover, there is no dispute that Cox had followed Officers Bennett and Campbell to the copy room without any resistance.  Accordingly, when

11

viewed in the light most favorable to Cox, the evidence supports a finding that Cox did not present a threat to the safety of the officers or others at the time this incident began.

Third, a reasonable juror could conclude that Cox was not "actively resisting arrest or attempting to evade arrest by flight" at the time that Officer Murphy purportedly punched his jaw. *Graham*, 490 U.S. at 396. While Cox did not immediately comply with Officer Murphy's two orders to put his hands on the wall, he claims that he did not physically resist in any way. Cox further testified that he did not raise his arms or make any other physical gesture that an officer could reasonably perceive as a threat. Moreover, Cox did not explicitly refuse to follow Officer Murphy's instructions—with, for example, an unequivocal "no"—and instead asked, "Why do I have to put my hands on the wall?" While Cox did not immediately obey, a reasonable juror might nonetheless find that such a verbal response, unaccompanied by any form of physical threat or struggle, does not rise to the level of "active resistance" or an attempt to flee. *See Brown*, 798 F.3d at 102 (holding that a jury could reasonably find that an arrestee was not "actively resisting arrest" by refusing to put her hands behind her back for handcuffing, where the arrestee "was not fleeing, nor physically attacking an officer, nor even making a move that an officer could reasonably interpret as threatening an attack" (citations omitted)).

Finally, viewed in the light most favorable to Cox, the evidence supports a finding that Officer Murphy used a significant degree of force. Officer Murphy allegedly punched Cox in the jaw with a closed fist and pushed him to the ground with as many as eight other officers. While "[n]ot every push or shove . . . violates the Fourth Amendment," *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397), a juror could reasonably conclude that a punch to the jaw is not a routine exercise of force, but rather one that may result in serious and lasting physical injury. *See, e.g.*, *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 405 (S.D.N.Y. 2007) (noting that officers' punch

to a suspect's jaw resulted in a nasal fracture and a fractured jaw that required surgical repair and the removal of several teeth).  A juror could also reasonably conclude that a punch to the jaw is unreasonable absent some physical resistance or threat from the arrestee.  *See, e.g.*, *O'Hara*, 570 F. App'x at 23 (holding that punching an "unarmed" and "non-menacing" arrestee in the face "*without* provocation" was unreasonable as a matter of law (emphasis in original)).  Moreover, if a juror credits Cox's testimony that he "remained calm," "didn't struggle," and "didn't resist or anything" after Officer Murphy punched him, she could reasonably conclude that it was unreasonable for as many as nine officers to take Cox to the ground, choke him, and "slam[]" his body to the floor.  In sum, a jury could reasonably find that Officer Murphy's actions were unreasonable, where Cox had allegedly committed only a minor parole violation, did not pose any physical threat to officers or others, and did not physically resist or threaten any officer on the scene.

### 2.  Clearly Established Right

At the time of the parole office incident in 2012, it was clearly established law that an officer uses excessive force by punching an arrestee in the jaw and forcing him to the ground, where the arrestee is suspected of a relatively minor offense and, though failing to immediately comply with an officer's order to put his hands on the wall, is not physically resisting arrest, making any threatening gesture, or attempting to flee.

As the Second Circuit has held, the law was clear before 2012 that it is unreasonable under the Fourth Amendment for an officer to use substantial force against an arrestee suspected of a minor offense who refuses to raise his arms but does not physically attack an officer, attempt to flee, or make any threatening gesture.  In *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015), the Circuit held that officers violated clearly established law as it stood in November 2011 by

13

pushing a woman suspected of disorderly conduct to the ground and pepper-spraying her after she refused to put her hands behind her back for handcuffing. *Id.* at 95, 97. The Second Circuit explained that the arrestee was not "actively resisting arrest" under Supreme Court precedent because, although she did not comply with the officers' order to put her hands behind her back, she "was not fleeing, nor physically attacking an officer, nor even making a move that an officer could reasonably interpret as threatening an attack." *Id.* at 102 (citations omitted). "At most," the Second Circuit explained, "her 'resistance' was a refusal to permit the easy application of handcuffs by placing her hands behind her back." *Id.* The Second Circuit rejected the argument that an arrestee's "refusal to submit to the easy application of handcuffs always permitted police officers to use substantial force." *Id.* Similarly here, Officer Murphy used "substantial force"—a closed-fist punch to the jaw—after Cox did not put his hands on the wall as ordered even though, like the arrestee in *Brown*, Cox was "not fleeing, nor physically attacking an officer, nor even making a move that an officer could reasonably interpret as threatening an attack." *Id.* at 102. Under *Brown*, which addressed the state of clearly established Fourth Amendment law the year before the incident in this case, Officer Murphy's use of substantial force against Cox for refusing to put his hands on the wall, absent any physical resistance or attempt to flee, violated clearly established law.

The Second Circuit has likewise held that, by 2012, the law clearly established that a punch to an arrestee's face is an unreasonable use of force where the suspect has not physically provoked or threatened officers on the scene. For example, in a summary order in *O'Hara v. City of New York*, 570 F. App'x 21 (2d Cir. 2014), the Second Circuit held that a police officer violated clearly established law in 2010 when he "punched [an arrestee] in the face *without* provocation and then proceeded to punch him repeatedly" once he fell to the ground, where the officer was one of six

14

officers on the scene and the arrestee was "unarmed," "non-menacing," and suspected of a "relatively minor" offense. *Id.* at 23–24 (emphasis in original). As in *O'Hara*, Officer Murphy "punched [Cox] in the face *without* provocation," albeit once rather than "repeatedly," *see id.*, even though Officer Murphy was one of several officers on the scene and even though Cox, according to his deposition testimony, remained calm, did not "raise [his] hand" or make any other threatening gesture, and "didn't resist or anything," Cox Feb. 1 Dep. Tr. at 53:11–12, 59:16–17; Cox Mar. 29 Dep. Tr. at 18:21–23. For the reasons articulated in *O'Hara*, no reasonable officer in Officer Murphy's position would have believed that the law authorized him to punch Cox in the jaw in effecting an arrest under these circumstances. *See O'Hara*, 570 F. App'x at 23–24.

The decisions of other circuits are in accord. In *Rohrbough v. Hall*, 586 F.3d 582 (8th Cir. 2009), for example, the Eighth Circuit denied qualified immunity on an excessive force claim brought against a police officer who "punched [an arrestee] in the face," then pushed him, "took him to the ground face down, landed on top of him, and handcuffed him," where the arrestee had initially greeted the officer but returned the officer's push after the officer shoved him. *Id.* at 585–87. The Eighth Circuit concluded that, if a jury found that the arrestee's resistance in pushing the officer was "*de minimis* or inconsequential," the officer's punch to his face and shove to the ground would violate clearly established Fourth Amendment law. *Id.* at 586. Similarly, the Ninth Circuit has long held that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (collecting cases dating back to 2001). Similarly here, if a jury were to determine that Cox's failure to immediately comply with Officer Murphy's order constituted a *de minimis* form of resistance—as it reasonably could—Officer Murphy would have exceeded clearly established constitutional limits on the use of force during

arrest by punching Cox in the face and forcing him to the ground.  *See Rohrbaugh*, 586 F.3d at 586; *cf. Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (denying qualified immunity on an excessive force claim brought against a police officer for "punch[ing] [an arrestee] in the stomach while he was handcuffed and not struggling or resisting.").

The decisions of district courts in this Circuit also lend support to the conclusion that Officer Murphy's purported punch to Cox's face violated clearly established Fourth Amendment law at the time of the incident.  In *Gersbacher v. City of New York*, 134 F. Supp. 3d 711 (S.D.N.Y. 2015), for example, Judge Woods found that an arrestee had stated a Fourth Amendment excessive force claim against police officers who had allegedly "punch[ed]" him and pinned him to the ground with the weight of their bodies in 2011, where the arrestee's offenses of disorderly conduct and resisting arrest were "not severe" and, although the arrestee may have "attempted to leave the immediate area," he was not "actively resisting arrest."  *Id.* at 723.  Similarly, in *Rivera v. Madan*, No. 10-CV-4136 (PGG), 2013 WL 4860116 (S.D.N.Y. Sept. 12, 2013), Judge Gardephe held that police officers were not entitled to qualified immunity on an excessive force claim for violently pushing a parolee against a wall and slamming his head against the floor in 2009, even though there was no dispute that the parolee was "resisting efforts" to lead him out of a hospital and "refusing to cooperate" with officers' orders, reasoning that "[i]f, as [the parolee] claims, he was subjected to an unprovoked violent assault at [the hospital], the officers could not have reasonably believed that their actions were lawful."  *Id.* at *7–11.  Consistent with these decisions, the Court finds that clearly established law provided Officer Murphy fair warning that punching a parolee in the jaw and taking him to the ground with several other officers during an arrest for alleged parole violations, absent any physical resistance or provocation, was unreasonable at the time the incident occurred.

16

The Court therefore concludes that Officer Murphy is not entitled to qualified immunity on Cox's excessive force claim.  Officer Campbell, however, is entitled to summary judgment on this claim, as there is no dispute that she was not "personally involved in the alleged deprivation" of Cox's constitutional rights.  *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (citation omitted); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[T]he personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)), *as amended* (Feb. 24, 2016).  Cox has provided no evidence that Officer Campbell directly participated in any use of force against him.  After Cox referred to Officer Campbell as a "broad," Campbell questioned him and notified Officers Bennett and Murphy.  But when asked whether Officer Campbell was present as Officer Murphy and other officers pushed him to the ground, Cox responded, "No. I don't know where she went."  Cox Mar. 29 Dep. Tr. at 24:8–9.  There is no evidence that Campbell directed other officers to use force against him, or that she failed to intervene once the physical struggle began.  Accordingly, summary judgment to Officer Campbell on Cox's excessive force claim is appropriate.

## B.  The March 8, 2013 Incident

Cox next claims that he was subjected to excessive force during the March 8, 2013 incident at Edgecombe Residential Treatment Facility.[5]  Because Cox was a prisoner serving a sentence for his criminal conviction at the time, this excessive force claim arises under the Eighth Amendment.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the

---

[5] Defendants argue that Cox has not exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1996 prior to bringing this claim.  The Court need not reach this argument because, even if Cox had properly exhausted his administrative remedies, there is no genuine dispute of material fact that would preclude summary judgment.

primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified.").

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective." *Id.* "First, the prisoner must allege that the defendant acted with a subjectively 'sufficiently culpable state of mind.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This subjective inquiry requires courts to examine "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Harris*, 818 F.3d at 64 (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). "Second, [the prisoner] must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford*, 796 F.3d at 256 (quoting *McMillian*, 503 U.S. at 8). This objective inquiry is "context specific, turning upon contemporary standards of decency." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)).

The Supreme Court has explained that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *McMillian*, 503 U.S. at 4; *see also Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam). Thus, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *McMillian*, 503 U.S. at 7). Nonetheless, "the extent of injury suffered by an inmate is one factor

that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," *McMillian*, 503 U.S. at 7 (internal quotation marks omitted), and "may also provide some indication of the amount of force applied," *Wilkins*, 559 U.S. at 37. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action,'" and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37–38 (quoting *McMillian*, 503 U.S. at 9).

Viewing the evidence in the light most favorable to Cox, the Court finds no basis for concluding that Officer Smith's use of force on March 8, 2013 was "objectively 'harmful enough' or 'sufficiently serious'" to violate the Eighth Amendment. *Crawford*, 796 F.3d at 256 (quoting *McMillian*, 503 U.S. at 8). Cox testified that Officer Smith "slammed" him into bunk beds, pulled his right arm behind his back, pushed his face towards a wall, and shoved him into two lockers. Defs. 56.1 ¶ 60. After the incident, a nurse found that Cox had approximately eighteen "superficial red openings on his back," and Cox denied feeling any pain. Cox has suffered no lasting injuries. Cox thus complains of a "push or shove" that caused no pain and only "superficial" injury— essentially the same conduct that the Supreme Court has described as insufficient to state an Eighth Amendment claim. *See Wilkins*, 559 U.S. at 38. Indeed, courts in this district have routinely found that similar—or more significant—uses of force are not sufficiently severe to support an excessive force claim. *See, e.g.*, *Rodriguez v. City of New York*, 802 F. Supp. 2d 477, 480–81 (S.D.N.Y. 2011) (holding officers did not use excessive force under the Eighth Amendment by "punching [an inmate] in the head and arm" and placing the inmate in an "extended chokehold," where a medical report indicated that the inmate had suffered "at most, some swelling on the left side of his face"); *Perry v. Stephens*, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (finding that officers' conduct in slapping and choking an inmate was not sufficiently severe, where the inmate suffered

"just a little bruise" and "minor pain that abated after 'about four days'"); *James v. Phillips*, No. 05-CV-1539 (PKC), 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) (concluding officers did not use excessive force in shoving an inmate into a door, where the inmate suffered only swelling on his chin).[6]   Consistent with these authorities, the Court finds that Officer Smith's alleged conduct in pushing and shoving Cox, which resulted in no pain and only "superficial" cuts to his back, is not harmful enough to support an Eighth Amendment excessive force claim.

Finally, even if Officer Smith's conduct were sufficiently severe, Cox has provided no evidence that Officer Smith acted with a "sufficiently culpable state of mind." *Crawford*, 796 F.3d at 296.  As discussed above, the "extent of the injury," which courts generally consider as part of the subjective inquiry of excessive force claims under the Eighth Amendment, is far from severe: Cox suffered several superficial cuts and reported feeling no pain. *Harris*, 818 F.3d at 64.  Cox has provided no evidence of Officer Smith's mental state, and there is no indication that the two had any preexisting relationship that might support an inference that Officer Smith pushed Cox out of personal resentment or malice.  *See James*, No. 05-CV-1539 (PKC), 2008 WL 1700125, at *4 ("With respect to a wanton state of mind, there was concededly no interaction between [the officer] and plaintiff prior to the date of the incident. This is not a case where the officer and the inmate had a history of unpleasant interactions.")  Thus, even if Cox had satisfied the objective element of an Eighth Amendment excessive force claim, he has failed to provide evidence of a genuine dispute as to whether Officer Smith acted with a subjectively culpable state of mind.

---

[6] *See also, e.g.*, *Kornegay v. New York*, 677 F. Supp. 2d 653 (W.D.N.Y. 2010) (officer's use of force in shoving inmate, who lost his balance and fell to the ground but was not physically injured, was not excessive); *Show v. Patterson*, 955 F. Supp. 182, 192–93 (S.D.N.Y. 1997) (officer's use of force in "pushing [an inmate] from one wall to another" was *de minimis*, where a medical examination revealed "no broken bones, bruises or swelling"); *Malloy v. DeFrank*, No. 95-CV-9122 (AJP), 1996 WL 631725, at *5 (S.D.N.Y. Oct. 31, 1996) (an officer's "push in the back," which caused an inmate to experience "momentary pain," did not rise to the level of a constitutional violation).

Accordingly, Commissioner Fischer and Officers Smith, Robinson, and Boykin are entitled to summary judgment on Cox's Eighth Amendment excessive force claim.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  Cox's claims against Defendants Fischer, Campbell, Smith, Robinson, and Boykin are dismissed.  Cox's excessive force claim against Defendant Murphy survives.

The Court notes that the exhibits to the Declaration of Michael J. Keane (Dkt. 47), which include the transcripts of Cox's depositions, do not appear to have been filed on the public docket. No later than April 6, 2017, Defendants shall publicly file the exhibits on the docket or submit a letter setting forth the basis for sealing or redacting these exhibits under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

A conference is hereby scheduled for April 13, 2017 at 4:00 p.m. in Courtroom 1506 at the United States Courthouse, 40 Foley Square, New York, New York 10007.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 42.

SO ORDERED.

Dated:      March 31, 2017
            New York, New York

Ronnie Abrams
United States District Judge

---

[7] Cox appears to claim that Officers Robinson and Boykin failed to intervene in his physical altercation with Officer Smith.  To the extent that Cox seeks to bring a failure-to-intervene claim against Officers Robinson and Boykin, this claim fails, as Officer Smith's use of force was not excessive as a matter of law.  Cox also appears to assert a claim against Commissioner Fischer for failing to respond to a letter he wrote regarding this incident.  To the extent that Cox claims that Commissioner Fischer may be held liable under Section 1983 for failing to address Officer Smith's use of excessive force, *see Littlejohn*, 795 F.3d at 314, this claim also fails, as Officer Smith committed no constitutional violation to which Commissioner Fischer may have been required to respond.